**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MEDPACE, INC. <br><br> Plaintiff, <br><br> -against- <br><br> AGENUS INC. and EQUINITI TRUST COMPANY, LLC, as Transfer Agent <br><br> Defendants. | Case No. 1:25-cv-04179 <br><br> **<u>COMPLAINT</u>** |

Plaintiff Medpace, Inc. ("Medpace"), by its undersigned attorneys, brings this action against Defendants Agenus Inc. ("Agenus") and Equiniti Trust Company, LLC, as Transfer Agent (the "Transfer Agent"), and alleges as follows:

<u>PARTIES</u>

1.      Medpace is an Ohio corporation, with its principal place of business in Cincinnati, Ohio, and is engaged in the business of providing services related to the design and execution of clinical development programs involving drugs, biologics and medical devices through engagement by its clients, the sponsors of clinical development programs to perform such services.

2.      Agenus is a Delaware corporation with its principal place of business at 3 Forbes Road, Lexington, MA 02421, and is in the business of developing, manufacturing, and/or distributing pharmaceutical products, medical devices and/or biotechnology products. Agenus' common stock is publicly traded on the NASDAQ stock exchange.

3.      Equiniti Trust Company, LLC, as the Transfer Agent, is upon information and belief a New York limited liability company with Delaware and/or New York member(s) and is in the

business of, *inter alia*, managing on behalf of its clientele (including Agenus) the issuance and cancellation of stock certificates and the recording of stock ownership transfers.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) (diversity) because Medpace, Agenus, and the Transfer Agent are citizens of different States and the amount in controversy exceeds the sum or value of $75,000.

5.      As to the Transfer Agent, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims against the Transfer Agent occurred in this district.

6.      As to Agenus, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims against Agenus occurred in this district.

7.      Venue also is proper in this Court, and this Court has jurisdiction over Agenus and this matter, pursuant to the forum selection clauses in all three written agreements on which this civil action, in part, is based and which agreements are further referenced and described below.

## STATEMENT OF FACTS

### Medpace and Agenus Enter Into the MSA

8.      On or about June 8, 2022, Medpace and Agenus entered into a Master Services Agreement (the "MSA") pursuant to which Agenus procured from Medpace and agreed to pay Medpace for certain services (the "Services").

9.      Pursuant to Section 1.1 of the MSA, Medpace and Agenus agreed that the descriptions and the costs of the specific Services procured by Agenus and provided by Medpace

would be set forth in written project plans to be agreed upon and signed by both parties. (MSA §1.1.)

10.    Pursuant to Section 5 of the MSA, Medpace and Agenus agreed that any modifications to the written project plans must be in writing and signed by both parties. (MSA §5.)

11.    Between March 1, 2022, and September 24, 2023, Medpace and Agenus negotiated, agreed upon, finalized and executed the following project plans and amendments (the "Project Plans")[1]:

| Project Plans and Amendments | Date |
|---|---|
| Project Plan 01 | June 8, 2022 |
| Amendment #1 to Project Plan 01 | Mar. 24, 2023 |
| Amendment #2 to Project Plan 02 | Sept. 24, 2023 |
| Project Plan 02 | March 1, 2022 |

12.    Pursuant to Section 3 of the MSA, Agenus agreed to pay Medpace for the Services in the amounts set forth in the Project Plans (MSA §3.1), to reimburse Medpace for certain "Pass-through Costs" (MSA §3.5.1), and to pay certain "Pre-funded Expenses" (MSA §3.5.2).

13.    Pursuant to Section 3.2 of the MSA, Agenus also agreed to pay Medpace for the amounts due under the MSA and the Project Plans within 30 days after receipt of a written invoice, and also to pay Medpace interest at the rate of 18% per annum on all invoices outstanding more than 15 days beyond the due date. (MSA §3.2.)

14.    Pursuant to Section 3.3 of the MSA, if Agenus disputed one or more items in an invoice, Agenus was required to notify Medpace in writing within 30 days after receipt of the invoice. (MSA §3.3.)

---

[1] Copies of the MSA and Project Plans are not attached to this Complaint because Agenus already has copies of these documents in its possession and because of the documents' confidential and proprietary nature and contents.

15.     Medpace has fully and properly performed all its duties and obligations under the MSA and the Project Plans and, since June 8, 2022, has duly and timely invoiced or otherwise properly assessed Agenus for the Services, for Pass-through Costs, and for Pre-funded Expenses.

**Agenus Defaults on its Payment Obligations and Medpace and Agenus enter into the Payment Agreement and the Escrow Services Agreement**

16.     As of December 2024, Agenus was in material default of its payment obligations to Medpace under the MSA but still required certain of the Services to be performed by Medpace in order for Agenus to remain in business.

17.     As an accommodation to Agenus, Medpace agreed on January 10, 2025, to enter into a Payment Agreement with Agenus (the "Payment Agreement") pursuant to which Medpace would continue to perform certain Services subject to the terms and conditions of the Payment Agreement. A true and accurate copy of the Payment Agreement is attached as Exhibit 1.

18.     Among its other provisions, in Section 2 of the Payment Agreement, Agenus in no uncertain terms acknowledged and agreed that:

> [T]he January 7, 2025 Account Statement is, exclusive of accrued interest, correct and complete in all respects and that the indicated total amount due Medpace by Agenus is not subject to any deductions, reductions, discounts, offsets, rebates, claims, accommodations or other adjustments whether asserted or unasserted, suspected or unsuspected, known or unknown, matured or unmatured, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, of any kind or nature or description whatsoever, whether based in statute, equity, common law, contact, tort, or any other grounds or authority or otherwise.

That Account Statement, a copy of which is attached as Exhibit 1 to the Payment Agreement, in turn provides that the total, undisputed amount due as of January 7, 2025 was $2,463,619.12, of which $1,995,702.89 was, at that time, past due.

19.     Agenus has not made any payments to Medpace since January 7, 2025, but Medpace has performed the Services it agreed to provide Agenus under the Payment Agreement.

20.     As of May 6, 2025, the total amount due to Medpace from Agenus, including for the Services performed by Medpace under the Payment Agreement plus interest at the rate specified in the MSA, was $4,072,879.21.

21.     Section 3.1 of the Payment Agreement required Agenus to bring current its account with Medpace by no later than the first to occur of the following dates (the "Payment Date"): (i) May 1, 2025; (ii) three business days immediately following Agenus' receipt of funding from the closing of a financial transaction resulting in more than $100M in proceeds received; or (iii) an uncured material breach by Agenus of the Payment Agreement.

22.     As additional consideration, assurance, collateral and security for Medpace entering into the Payment Agreement and continuing to provide certain Services despite Agenus' material breach of the MSA, also on January 10, 2025, Medpace, Agenus, and Equiniti Trust Company, LLC, as Escrow Agent (the "Escrow Agent"), entered an Escrow Services Agreement (the "Escrow Agreement"), a true and accurate copy of which is attached as Exhibit 2.

23.     Pursuant to the terms of the Payment Agreement and Escrow Agreement, Agenus and Medpace agreed that if Agenus failed to bring current its account with Medpace by the Payment Date, Medpace, in its sole discretion, could direct the Escrow Agent to deliver to the Transfer Agent  joint written instructions (the "Transfer Instructions") which directed the Transfer Agent "immediately upon your receipt of these joint instructions, to issue in book entry form in the name of Medpace, Inc.," the number of Agenus' publicly-traded common shares (NASD: AGEN) (the "Shares") necessary to pay in full the then-past due balance. (Payment Agreement §4.) A true and accurate copy of the Transfer Instructions, which Agenus and Medpace pre-signed and deposited with the Escrow Agent, is attached as Schedule B to Exhibit 2.

24.     Pursuant to Section 4 of the Payment Agreement, the number of Shares which, if necessary, would be transferred to Medpace pursuant to the Payment Agreement, the Escrow Agreement, and the Transfer Instructions would be calculated based on: (a) the past due balance that Agenus owed Medpace at the time Medpace delivered the Transfer Instructions to the Escrow Agent (the "Past Due Balance"); and (b) the closing price of the Shares on their last trading day immediately prior to the date the Transfer Agent received the Transfer Instructions.

25.     Section 6.4 of the Payment Agreement also provides that, if any Shares are transferred to Medpace, Agenus must file a final prospectus together with a prospectus supplement ("Prospectus Supplement") for such transaction with the U.S. Securities and Exchange Commission ("SEC") within the timeframe required by Rule 424(b).

26.     Pursuant to Section 10.7 of the Payment Agreement, Medpace and Agenus also agreed that if either Medpace or Agenus is required to commence legal proceedings to enforce the rights of the Payment Agreement, they can recover reasonable attorneys' fees and costs in such proceeding.

### Agenus Fails to Pay the Past Due Balance by the Payment Date and Medpace Provides Its Written Direction to the Escrow Agent

27.     Agenus did not pay all or any portion of the Past Due Balance on or before the Payment Date and still has not paid all or any portion of the Past Due Balance. Agenus is therefore in material default of its obligations under the MSA and the Payment Agreement.

28.     On May 6, 2025, Medpace exercised its rights under the Payment Agreement and the Escrow Agreement and, pursuant to and in accordance with Section 2 of the Escrow Agreement, delivered to the Escrow Agent a written direction (the "Medpace Written Direction") instructing the Escrow Agent to immediately transmit the Transfer Instructions (referred to in the Escrow Agreement as the "Instruction Letter") to the Transfer Agent no later than 10:00 AM ET

on Wednesday May 7, 2025. A true and accurate copy of the Medpace Written Direction is attached as Exhibit 3.

29.     Also on May 6, 2025, pursuant to and in accordance with the Payment Agreement and the Transfer Instructions, Medpace delivered to the Transfer Agent a separate letter informing the Transfer Agent of the then Past Due Balance, plus interest at the rate specified in the MSA (a total of $4,072,879.21), and the number of Shares (1,318,084) to be issued to Medpace. A true and accurate copy of this letter is attached as Exhibit 4.

**Agenus Objects to the Transfer of the Shares and
the Transfer Agent Refuses to Comply with the Transfer Instructions**

30.     On May 7, 2025, at 5:00 PM ET, in violation of the Payment Agreement and the Escrow Agreement, and despite having no other right to do so, Agenus sent a letter to the Escrow Agent disputing the issuance of the Shares to Medpace (the "Agenus Objection Letter"), ostensibly on the grounds that Medpace had incorrectly calculated the Past Due Balance, and demanding that the Escrow Agent "freeze the issuance of the shares until the dispute is resolved." A true and accurate copy of the Agenus Objection Letter is attached as Exhibit 5.

31.     On May 8, 2025, the Escrow Agent informed Medpace and Agenus in writing that the Transfer Instructions already had been delivered by the Escrow Agent to the Transfer Agent, and, therefore, the Escrow Agent had fully discharged its obligations under the Escrow Agreement and had no ability to take any action in response to the Agenus Objection Letter.

32.     Despite not being a party to the Payment Agreement or the Escrow Agreement, and despite not having any right to disregard the Transfer Instructions or otherwise intervene in the alleged dispute, also on May 8, 2025, the Transfer Agent informed Agenus and Medpace in writing that it unilaterally had placed a so-called "legal hold" on the Shares and "*will not permit the Shares*

*to be transferred out of Medpace's account* until the underlying dispute between Agenus and Medpace is finally resolved to EQ's satisfaction" (emphasis added).

## COUNT I:
## Breach of the MSA – Against Agenus

33.    Medpace repeats and realleges paragraphs 1 through 32 of the Complaint as if fully set forth herein.

34.    The MSA and the Project Plans constitute enforceable, written contracts.

35.    Medpace has fully and properly performed all its duties and obligations under the MSA and the Project Plans.

36.    Agenus has failed to pay Medpace (despite demand) the amounts due and owing under the MSA and the Project Plans and, therefore, Agenus is in material breach of the MSA and the Project Plans.

37.    As a direct and proximate result of Agenus' material breaches of the MSA and the Project Plans, Agenus now owes Medpace at least $4,072,879.21 for the Services, Pass-through Costs, and Pre-funded Expenses, in addition to all other amounts that are now due and hereafter may become due under the MSA and Project Plans in amounts to be proven at trial, together with contractual interest at the annual rate of 18%, and post-judgment interest thereon.

## COUNT II:
## Breach of the Payment Agreement – Against Agenus

38.    Medpace repeats and realleges paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.    The Payment Agreement constitutes an enforceable, written contract.

40.    Medpace has fully and properly performed all its obligations under the Payment Agreement.

41.     Agenus is in material breach of the Payment Agreement in that it wrongfully has attempted to interfere with and abrogate Medpace's lawful rights to access the Shares and also has failed to file the Prospectus Supplement within the time required under SEC Rule 424(b).

42.     As a direct and proximate result of Agenus' material breaches of the Payment Agreement, Agenus now owes Medpace at least $4,072,879.21, plus any diminution in the value of the Shares after May 8, 2025, post-judgment interest, and attorneys' fees and court costs.

**COUNT III:**
**Breach of the Escrow Agreement – Against Agenus**

43.     Medpace repeats and realleges paragraphs 1 through 42 of the Complaint as if fully set forth herein.

44.     The Escrow Agreement constitutes an enforceable, written contract.

45.     Medpace has fully and properly performed all its obligations under the Escrow Agreement.

46.     Agenus is in material breach of the Escrow Agreement in that it wrongfully has attempted to interfere with and abrogate Medpace's lawful rights to require the Transfer Agent to issue and transfer the Shares to Medpace and to access the Shares.

47.     As a direct and proximate result of Agenus' material breach of the Escrow Agreement, Agenus now owes Medpace at least $4,072,879.21, plus any diminution in the value of the Shares after May 8, 2025, post-judgment interest, and attorneys' fees and court costs.

**COUNT IV**
**Tortious Interference with Contract – Against the Transfer Agent**

48.     Medpace repeats and realleges paragraphs 1 through 47 of the Complaint as if fully set forth herein.

49.     The Payment Agreement and the Escrow Agreement are valid and enforceable contracts between Medpace and Agenus and are both known to the Transfer Agent.

50.     The Transfer Agent intentionally, and with reckless disregard to the rights of Medpace, illegally and improperly has acted, and continues to illegally and improperly act, to disrupt and interfere with Medpace's lawful rights under the Payment Agreement and the Escrow Agreement to access the Shares.

51.     As a direct and proximate result of the Transfer Agent's actions, Medpace has suffered damages at least in the amount of $4,072,879.21, plus any diminution in the value of the Shares after May 8, 2025, in amounts to be determined at trial.

52.     As the result of the Transfer Agent's tortious interference with contract, Medpace also is entitled to punitive damages against the Transfer Agent in an amount to be determined at trial.

**COUNT V**
**Conversion – Against the Transfer Agent**

53.     Medpace repeats and realleges paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54.     The Transfer Agent has wrongfully and purposefully exercised, and continues to wrongfully and purposefully exercise, control over Medpace's lawful possessory rights to the Shares.

55.     As a direct and proximate result of the Transfer Agent's conversion, Medpace has suffered damages at least in the amount of $4,072,879.21, plus any diminution in the value of the Shares after May 8, 2025, in amounts to be determined at trial.

56.     As the result of the Transfer Agent's conversion, Medpace also is entitled to punitive damages against the Transfer Agent in an amount to be determined at trial.

**COUNT VI**
**Declaratory Judgment – Against Agenus and the Transfer Agent**

57.     Medpace repeats and realleges paragraphs 1-54 of the Complaint as if fully set forth herein.

58.     A real and justiciable controversy exists between Medpace, Agenus, and the Transfer Agent regarding Medpace's immediate and exclusive right to possession, custody, and control of the Shares, as well as the obligations of Agenus and the Transfer Agent to effectuate the transfer of such Shares to Medpace pursuant to the terms of the Payment Agreement, the Escrow Agreement, the Medpace Written Direction, and the Transfer Instructions.

59.     Pursuant to the Payment Agreement and the Escrow Agreement, Medpace has a clear, vested, and enforceable right to receive the Shares upon Agenus's failure to satisfy its payment obligations by the Payment Date.

60.     The Payment Agreement and Escrow Agreement expressly provide that, upon Agenus's default, Medpace is entitled to direct the Escrow Agent to deliver the pre-signed Transfer Instructions to the Transfer Agent, and that the Transfer Agent is required to issue and transfer the requisite number of Shares to Medpace without further action or approval from Agenus upon issuance of the Transfer Instructions by the Escrow Agent.

61.     Agenus and the Transfer Agent have together wrongfully collaborated and conspired, in contravention of the Payment Agreement, the Escrow Agreement, the Medpace Written Direction, and the Transfer Instructions, to deprive Medpace of its lawful right to access the Shares.

62.     As a result of the wrongful conduct of both Agenus and the Transfer Agent, Medpace has been deprived of its bargained-for rights and has suffered, and continues to suffer, irreparable harm, including but not limited to the inability to access and dispose of the Shares,

exposure to market risk and diminution in value of the Shares, and impairment of its contractual and property rights.

63.    In order to remedy, in part, their wrongful conduct, Medpace is entitled to a declaratory judgment that it is entitled to immediate and exclusive possession, custody, and control of the Shares and Agenus and the Transfer Agent are required to forthwith take all action necessary to complete the unrestricted transfer of the Shares to Medpace.

**WHEREFORE**, Medpace demands judgment against Agenus and Transfer Agent as follows:

(A)    Award Medpace damages in an amount to be determined at trial, but in any event, not less than $4,072,879.21, together with pre- and post- judgment interest at the contractual rate of 18% per year;

(B)    Issue a declaratory judgment that:

a.    Medpace is entitled to immediate and exclusive possession, custody, and control of the Shares;

b.    The Transfer Agent has no right to withhold or refrain from transferring the Shares to Medpace following the issuance of the Transfer Instructions;

c.    Agenus and the Transfer Agent are required to take all actions necessary to complete the unrestricted transfer of the Shares to Medpace forthwith, including but not limited to the removal of any "legal hold" or other impediment to Medpace's full ownership and control of the Shares;

d.    any further interference by Agenus or the Transfer Agent with Medpace's right and entitlement to the Shares is unlawful and in violation of Medpace's contractual and property rights;

**(C)**      Issue a mandatory injunction directing Agenus and the Transfer Agent to take all action necessary to complete the unrestricted transfer of the Shares to Medpace;

**(D)**      Punitive damages against the Transfer Agent in an amount to be determined at trial;

**(E)**      Attorneys' fees and costs; and

**(F)**      Any other relief that this Court deems just and proper.

Dated:  May 19, 2025                Respectfully submitted,

**THOMPSON HINE LLP**

*/s/ Anna K. Stark*
Anna K. Stark
300 Madison Avenue, 27th Floor
New York, New York 10017
T: (212) 908-3928
F: (212) 344-6101
Anna.Stark@ThompsonHine.com

*Attorney for Medpace, Inc.*