# Exhibit 1

EXECUTION COPY

# PAYMENT AGREEMENT

THIS PAYMENT AGREEMENT (this "**Agreement**"), effective as of January 10, 2025 (the "**Effective Date**"), is entered into by and between Medpace, Inc., an Ohio corporation ("**Medpace**"), and Agenus, Inc., a Delaware corporation ("**Agenus**") (each a "**Party**" and, collectively, the "**Parties**"), as follows:

## RECITALS

WHEREAS, Medpace and Agenus are parties to that certain Master Services Agreement dated as of June 8, 2022 (the "**MSA**") pursuant to which Medpace agreed to provide Agenus, and Agenus agreed to pay for, certain Services (as defined in the MSA);

WHEREAS, since the inception of the MSA, Medpace has provided to Agenus, and has invoiced Agenus for, the Services all pursuant to and in accordance with the MSA and, for purposes of this Agreement, "Account" shall mean all amounts heretofore and hereafter invoiced, unpaid, and past due by Medpace to Agenus for the Services;

WHEREAS, as of the Effective Date, and as indicated on the Medpace Statement of Open Invoices dated January 7, 2025 attached hereto as **Exhibit 1 (the "January 7, 2025 Account Statement")**, Agenus owes Medpace under the MSA and on Account the sum of $2,463,619.12 of which $467,916.23 is current and the balance of which is past due and, therefore, Agenus is in material default of its payment obligations under the MSA;

WHEREAS, pursuant to and in accordance with the Section 3.2 of the MSA, interest on all Medpace invoices outstanding more than 15 days beyond the due date has accrued, and will continue to accrue, from and after the date of each such invoice at the rate of 18% per annum;

WHEREAS, Agenus has informed Medpace that Agenus presently is unable to bring the Account current but still requires certain of the Services in order to continue an ongoing Medpace-managed clinical trial of an Agenus compound;

WHEREAS, Medpace is willing to continue to provide certain of the Services as hereinafter described to Agenus only on the terms and subject to the conditions of this Agreement;

WHEREAS, Agenus' common stock is publicly traded on the NASDAQ stock exchange (NASDAQ: AGEN) (the "**Shares**")] and Equiniti Trust Company is the transfer agent for the Shares (the "**Transfer Agent**"); and

WHEREAS, simultaneously with the execution of this Agreement, the Parties have entered into that certain Escrow Agreement (the "**Escrow Agreement**") with Equiniti as Escrow Agent (the "**Escrow Agent**").

NOW, THEREFORE, in consideration of the mutual promises contained herein, the receipt of which is hereby acknowledged, the recitals set forth above, and for other good and valuable consideration, the Parties agree as follows:

1

*EXECUTION COPY*

# AGREEMENT

1. **Recitals.** The foregoing recitals are incorporated herein by reference.

2. **Confirmation of Account Balance.** Agenus acknowledges and agrees that the January 7, 2025 Account Statement is, exclusive of accrued interest, correct and complete in all respects and that the indicated total amount due Medpace by Agenus is not subject to any deductions, reductions, discounts, offsets, rebates, claims, accommodations or other adjustments whether asserted or unasserted, suspected or unsuspected, known or unknown, matured or unmatured, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, of any kind or nature or description whatsoever, whether based in statute, equity, common law, contact, tort, or any other grounds or authority or otherwise.

3. **Payment Date; Interim Services.**

    3.1 No later than the first to occur of: (a) May 1, 2025; (b) three business days immediately following Agenus' receipt of funding from the closing of a financial transaction resulting in more than $100M in proceeds received; or (c) an uncured material breach by Agenus of this Agreement (the "**Payment Date**"), Agenus shall bring the Account current, which shall include all accrued interest, in respect of all invoices issued as of the Payment Date and for which the due date (i.e., 30 days after the invoice date) has passed (collectively, the "**Past Due Balance**").

    3.2 Until Agenus pays the then Past Due Balance in full and thereby brings the Account current, and provided Agenus is not in default of its duties and obligations under this Agreement, the Services furnished by Medpace to Agenus under the MSA shall be as provided, and as limited, on the attached **Exhibit 2** (the "**Interim Services**").

4. **Instructions to Issue Shares.** As additional consideration for Medpace's willingness to continue to provide the Interim Services after the Effective Date, and as assurance, collateral and security for Agenus' performance as and when due of its payment obligation set forth in Section 3.1 above, simultaneously with the execution of this Agreement, the Parties shall execute and deliver to the Escrow Agent joint written instructions to the Transfer Agent, in the form provided on the attached **Exhibit 3** (the "**Transfer Instructions**"), that direct the Transfer Agent to access and transfer to Medpace, or its designee, from among those Shares registered on the Registration Statement (as defined in Section 6.4 below), the number of such Shares, calculated by the closing price of the Shares on their last trading day immediately prior to the date the Transfer Agent receives the Transfer Instructions, and after the payment of all commissions and all other customary transfer expenses, necessary to pay in full the then Past Due Balance.

5. **Transfer of Shares.** Unless otherwise directed by joint written instructions in accordance with the terms of the Escrow Agreement:

    5.1 The Escrow Agent shall hold the Transfer Instructions until the Payment Date.

2

*EXECUTION COPY*

5.2 If on or before the Payment Date Agenus pays in full the then Past Due Balance, Medpace promptly shall so notify the Escrow Agent and direct the Escrow Agent to destroy the Transfer Instructions and terminate the Escrow Agreement.

5.3 If on or before the Payment Date Agenus does not pay in full the then Past Due Balance, Medpace shall have the unqualified option, in its sole discretion, to so notify the Escrow Agent, to direct the Escrow Agent to immediately deliver the Transfer Instructions to the Transfer Agent, and to notify the Transfer Agent in writing, with a copy to Agenus, of the amount of the then Past Due Balance. If Agenus pays a partial amount of the then Past Due Balance on or before the Payment Date, only the balance of the then Past Due Balance should be directed to the Escrow Agent for delivery of the Transfer Instructions to the Transfer Agent. In all events, Agenus' material default of its payment obligations to Medpace shall not be deemed to have been cured unless and until the then Past Due Balance is paid in full.

6. **Representations and Warranties of Agenus.** Agenus hereby represents and warrants to Medpace that:

6.1 This Agreement has been duly authorized, executed and delivered by Agenus and Agenus has the requisite power and authority to execute, deliver and perform this Agreement.

6.2 This Agreement constitutes the valid, legal and binding agreement of Agenus, enforceable against Agenus in accordance with its terms.

6.3 The Shares are duly authorized and, if and when issued in accordance with the terms of this Agreement, shall be duly and validly issued, fully paid, and non-assessable, free and clear of all liens and other encumbrances imposed by Agenus. The Shares are not and shall not be subject to the preemptive rights of any holders of any security of Agenus or similar contractual rights granted by Agenus.

6.4 Agenus has filed a registration statement on Form S-3ASR (File No. 333-272911) (the "**Registration Statement**") with the U.S. Securities and Exchange Commission (the "**Commission**") in conformity with the requirements of the Securities Act of 1933, as amended (the "**Securities Act**"), which Registration Statement became effective on filing on June 23, 2023, including the final prospectus included therein (the "**Prospectus**"), and such amendments and supplements thereto as may have been required up to and including the Effective Date. The Registration Statement is effective under the Securities Act and no stop order preventing or suspending the effectiveness of the Registration Statement or the Prospectus or suspending or preventing the use of the Registration Statement or the Prospectus has been issued by the Commission and no proceedings for that purpose have been instituted or are threatened by the Commission. If any Shares are transferred to Medpace pursuant to this Agreement, Agenus shall file the Prospectus along with a prospectus supplement (the "**Prospectus Supplement**") for such transaction with the Commission pursuant to Rule 424(b). At the time the

3

*EXECUTION COPY*

Registration Statement and any amendments thereto became effective as determined under the Securities Act, at the Effective Date and at the date of transfer of any Shares to Medpace, the Registration Statement and any amendments thereto conformed and shall conform in all material respects to the requirements of the Securities Act and did not and shall not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading; and the Prospectus and any amendments or supplements thereto (including the Prospectus Supplement), at the time the Prospectus or any amendment or supplement thereto was issued and on the date of any transfer of Shares to Medpace, conformed and shall conform in all material respects to the requirements of the Securities Act and did not and shall not contain an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

6.5  As of the Effective Date Agenus has, and at all times hereafter shall maintain, on the Registration Statement twice the number of Shares necessary to pay in full the then Past Due Balance in the manner and at the time set forth in this Agreement and otherwise is, and at all times hereafter shall remain, in compliance with Section 6.4 above.

6.6  Except as has been obtained, given, or made prior to the Effective Date, Agenus is not required to obtain any consent, waiver, authorization or order of, give any notice to, or make any filing or registration with, any court or other federal, state (including state blue sky law), local or other governmental authority or other person, business, governmental authority, or other entity in connection with the execution, delivery and performance by Agenus of this Agreement, other than: (a) the filing with the Commission of the Prospectus Supplement, and (b) notices and/or application(s) to each applicable trading or stock market for the listing of the Shares for trading thereon in the time and manner required thereby, and (c) filings required by the Financial Industry Regulatory Authority.

7.  **No Rescission or Termination.** Each Party acknowledges that it understands and accepts the risk that the facts with respect to which this Agreement is entered into may be different from the facts now known or believed by it to be true. From and after the Effective Date, this Agreement shall not be subject to termination or rescission by virtue of any such differences in fact. In entering into this Agreement, each of the Parties acknowledges that it has conducted its own independent investigation, has consulted with legal counsel of its own choice, and has not relied on any statement, representation, promise, inducement, or agreement expressly contained within this Agreement.

8.  **No Novation.** The duties and obligations of Agenus under this Agreement including, without limitation, its transfer of Shares pursuant to Section 4 above, shall not be or be deemed to be, in substitution of or replacement for, but shall be in addition to, all of Agenus' duties and obligations under the MSA and the Account which shall remain in full force and effect according to their terms.

4

Docusign Envelope ID: 81F1538D-EF44-405D-89DF-1CE3CAD6981B

*EXECUTION COPY*

9. **Consultation with Attorneys.** The Parties acknowledge and agree that they have had the opportunity to retain independent counsel to represent them in connection with their consideration of this Agreement. The Parties represent and warrant that each of them has undertaken its own investigation of the facts and is relying solely upon its own knowledge and the advice of its counsel.

10. **General Provisions.**

    10.1 **Voluntary Agreement.** The Parties acknowledge that they have read this Agreement and understand all of its terms and that this Agreement is executed voluntarily, without duress, and with full knowledge of its legal significance.

    10.2 **Authority to Execute Agreement.** Each person whose signature appears hereon individually represents and warrants to the other Party that he or she has been fully authorized, and has fully authority, to execute this Agreement on behalf of the entity on whose behalf he or she executed this Agreement.

    10.3 **Counterparts.** This Agreement may be executed in two or more counterparts, including electronic or facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

    10.4 **Interpretation.** This Agreement has been negotiated at arm's length between persons (or their representatives) sophisticated and knowledgeable in the matters dealt within this Agreement. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable and is hereby waived. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose of the Parties and this Agreement.

    10.5 **Notices.** Any notice, request, instruction, or other document or communication required or permitted to be given under this Agreement shall be in writing and shall be deemed given and effective upon receipt if delivered in person, by a messenger or by a nationally recognized courier service and addressed as follows:

    If to Medpace, delivered to:

    Medpace, Inc.
    5375 Medpace Way
    Cincinnati, Ohio 45227
    Attn: Stephen P. Ewald, Esq.
       General Counsel
       s.ewald@medpace.com

Docusign Envelope ID: 81F1538D-EF44-405D-89DF-1CE3CAD6981B

*EXECUTION COPY*

      If to Agenus, delivered to:

      Agenus Inc.
      3 Forbes Road
      Lexington, MA 02421-7305
      Email: legal.notices@agenusbio.com
      Attn : Chief Legal Officer

10.6 **No Waiver.** This Agreement shall not constitute a waiver of Agenus' material default under the MSA or of any other existing or future default by Agenus thereunder.

10.7 **Governing law and Jurisdiction.** This Agreement is made and entered into under the laws of the State of New York and shall be interpreted, applied, and enforced under those laws. Any litigation concerning this Agreement shall be held in the venue of the United States District Court for the Southern District of New York. Each of the Parties consents to the exclusive jurisdiction of the United States District Court for the Southern District of New York as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

10.8 **Attorneys' Fees and Costs.** The Parties agree that if either Party is required to commence legal proceedings to enforce its rights under this Agreement, the prevailing Party in such proceedings shall be entitled, in addition to all its other legal and equitable rights and remedies, to recover its reasonable attorneys' fees and costs in such proceedings from the other Party.

10.9 **Severability.** If any provision of this Agreement is held to be unenforceable, such provision will be considered separate, distinct, and severable from the other remaining provisions of this Agreement and will not affect the validity or enforceability of such other remaining provisions, and that, in all other respects, this Agreement will remain in full force and effect. If any provision of this Agreement is held to be unenforceable as written but may be made to be enforceable by limitation thereof, then such provision will be enforceable to the maximum extent permitted by applicable law.

10.10 **Entire Agreement.** This Agreement constitutes the complete, exclusive, and final agreement between the Parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the Parties or any of their agents, shareholders, representatives, or attorneys, with regard to the subject matter, basis, or effect of this Agreement. The Parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.

*[signature page follows]*

*EXECUTION COPY*

**IN WITNESS WHEREOF,** the Parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

Medpace, Inc.:

By: *Stephen P. Ewald* (DocuSigned, 041CE770FA8447A...)
Name: Stephen P. Ewald
Title: General Counsel
Dated: 1/14/2025

Agenus Inc.:

By: _____
Name: _____
Title: _____
Dated: _____

*EXECUTION COPY*

**IN WITNESS WHEREOF,** the Parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

Medpace, Inc.:

By: _____
Name: _____
Title: _____
Dated: _____

Agenus Inc.:

*Signed by: Garo Armen*
—7A8430FAE2E9415...

By: _____
Name: Garo Armen
Title: Chairman & CEO
Dated: January 14, 2025

*EXECUTION COPY*

# EXHIBIT 1

**STATEMENT OF OPEN INVOICES**
Statement Date: Tuesday, January 7, 2025

MEDPACE

| Project (Sponsor Reference) | Invoice / Credit Memo | Invoice Date | Due Date | Billing Currency | Current | 1 - 30 Days Past Due | 31 - 45 Days Past Due | > 45 Days Past Due | Days Past Due | Transaction Type |
|---|---|---|---|---|---|---|---|---|---|---|
| C-800-02-23 (54072) | NMECI0033879 | 9/25/2024 | 10/25/2024 | USD | | | | 220,036.39 | 74 | Direct Fees |
| C-800-02-23 (54072) | NMECI0034963 | 10/14/2024 | 11/13/2024 | USD | | | | 1,647.35 | 55 | Pass-Through |
| C-800-02-23 (54072) | NMECI0035969 | 10/24/2024 | 11/23/2024 | USD | | | 229,690.60 | | 45 | Direct Fees |
| C-800-02-23 (54072) | NMECI0035812 | 10/25/2024 | 11/24/2024 | USD | | | 4,001.39 | | 44 | Pass-Through |
| C-800-02-23 (54072) | NMECI0037156 | 11/14/2024 | 12/14/2024 | USD | | 8,532.18 | | | 24 | Pass-Through |
| C-800-02-23 (54072) | NMECI0037718 | 11/25/2024 | 12/25/2024 | USD | | 4,481.98 | | | 13 | Pass-Through |
| C-800-02-23 (54072) | NMECI0038406 | 12/2/2024 | 1/1/2025 | USD | | 221,035.07 | | | 6 | Direct Fees |
| C-800-02-23 (54072) | NMECI0038908 | 12/13/2024 | 1/12/2025 | USD | 2,062.35 | | | | | Pass-Through |
| C-800-02-23 (54072) | NMECI0040013 | 12/24/2024 | 1/23/2025 | USD | 3,401.79 | | | | | Pass-Through |
| C-800-02-23 (54072) | NMECI0040183 | 12/24/2024 | 1/23/2025 | USD | 208,874.81 | | | | | Direct Fees |
| C-800-25 (PO #54679) | NMECI0033880 | 9/25/2024 | 10/25/2024 | USD | | | | 246,580.96 | 74 | Direct Fees |
| C-800-25 (PO #54679) | NMECI0034962 | 10/14/2024 | 11/13/2024 | USD | | | | 32,494.34 | 55 | Pass-Through |
| C-800-25 (PO #54679) | NMECI0035990 | 10/24/2024 | 11/23/2024 | USD | | | 293,474.49 | | 45 | Direct Fees |
| C-800-25 (PO #54679) | NMECI0035811 | 10/25/2024 | 11/24/2024 | USD | | | 8,169.31 | | 44 | Pass-Through |
| C-800-25 (PO #54679) | NMECI0037155 | 11/14/2024 | 12/14/2024 | USD | | 8,370.93 | | | 24 | Pass-Through |
| C-800-25 (PO #54679) | NMECI0037717 | 11/25/2024 | 12/25/2024 | USD | | 11,751.57 | | | 13 | Pass-Through |
| C-800-25 (PO #54679) | NMECI0038342 | 11/27/2024 | 12/27/2024 | USD | | 209,189.65 | | | 11 | Direct Fees |
| C-800-25 (PO #54679) | NMECI0038907 | 12/13/2024 | 1/12/2025 | USD | 21,383.82 | | | | | Pass-Through |
| C-800-25 (PO #54679) | NMECI0040011 | 12/24/2024 | 1/23/2025 | USD | 6,807.64 | | | | | Pass-Through |
| C-800-25 (PO #54679) | NMECI0040182 | 12/24/2024 | 1/23/2025 | USD | 221,686.24 | | | | | Direct Fees |
| C-800-02-23 | NMECI0033013 | 9/13/2024 | 10/13/2024 | USD | | | | 27,153.51 | 86 | Prefunded |
| C-800-02-23 | NMECI0033146 | 9/17/2024 | 10/17/2024 | USD | | | | 285,369.33 | 82 | Prefunded |
| C-800-25 | NMECN000000 | 10/23/2024 | 11/22/2024 | USD | | | | (34,192.00) | 46 | Prefunded |
| C-800-25 | NMECI0035912 | 10/23/2024 | 11/22/2024 | USD | | | | 61,301.78 | 46 | Prefunded |
| C-800-02-23 | NMECI0035916 | 10/23/2024 | 11/22/2024 | USD | | | | 47,603.23 | 46 | Prefunded |
| C-800-25 | NMECI0036582 | 11/1/2024 | 12/1/2024 | USD | | | 6,591.07 | | 37 | Prefunded |
| C-800-25 | NMECN000000 | 11/7/2024 | 12/7/2024 | USD | | | (1,100.87) | | 31 | Prefunded |
| C-800-25 | NMECI0038430 | 12/2/2024 | 1/1/2025 | USD | | 66,277.47 | | | 6 | Prefunded |
| C-800-02-23 | NMECI0038418 | 12/2/2024 | 1/1/2025 | USD | | 37,243.16 | | | 6 | Prefunded |
| C-800-25 | NMECI0039255 | 12/13/2024 | 1/12/2025 | USD | 3,699.58 | | | | | Prefunded |
| **Balance:** | | | | | 467,916.23 | 566,882.01 | 540,825.99 | 887,994.89 | | |

Total Due  2,463,619.12
Past Due  1,995,702.89

*EXECUTION COPY*

# EXHIBIT 2

**Services to Continue:**

For 23:

1. Complete submissions for 2 Investigator Brochures (from Jun & Jul 2024), 1 ICF, and updated IMPD.
2. Routine TMF Filing
3. Agenus Access (read only) to the ClinTrak System (CTMS and TMF)
4. Completion of expedited and periodic safety reporting tasks in Brazil (per Medpace SMP)

For 25:

1. Complete submissions for 2 Investigator Brochures (from Jun & Jul 2024), 2 ICFs (Main Dec 2024, RECIST Oct 2024) Protocol V 7.0 (Jun 2024)
2. Routine TMF Filing
3. Agenus Access (read only) to the ClinTrak System (CTMS and TMF)
4. Completion of expedited and periodic safety reporting tasks in Brazil (per Medpace SMP)

**Suspended/Postponed Services:**

Except as may be necessary to ensure patient safety and to comply with applicable regulatory requirements, all other activities will be suspended/postponed until Agenus brings its account current including, without limitation, the following:

CTM / Overall Project Management:

- Replies to incoming communications (all of which should be routed through regularly scheduled meetings which, at most, will last 30 minutes every other week for each trial).
- Protocol Deviation review meetings
- Trackers/study updates
- In-process plan updates
- Resolving/closing SCAPAs
- SMC meeting scheduled in January

Sites / CRAs:

- Medpace team (CTM's) follow-up with sites on pending data entry or open queries
- IP Tracking and management, performed as part of RMVs,
- Ongoing document collection
- Site payment processing or support
- Bi-weekly emails to sites with query metrics
- January site visits
- Routine CRA site communications (will be sent directly to Agenus)

*EXECUTION COPY*

# EXHIBIT 3

Date: _____

Equiniti Trust Company, LLC,
as Transfer Agent
48 Wall Street, 22nd Floor
New York, New York 10005

Dear Transfer Agent:

You are hereby authorized and directed, immediately upon your receipt of these joint issuance instructions, to issue in book entry form in the name of Medpace, Inc. ("Medpace"), 5375 Medpace Way, Cincinnati, OH 45227, EIN: 75-3033627, from the 0.01 par value per share common stock of Agenus, Inc. ("Agenus") registered by Agenus on Form S-3ASR (File No. 333-272911) with the U.S. Securities and Exchange Commission (the "Shares"), the number of Shares, separately calculated and provided to you by Medpace as indicated below, based on the closing price of the Shares on their last trading day immediately prior to the date you receive these joint transfer instructions, and after the payment of all commissions and all other customary transfer expenses, necessary if sold by Medpace to pay in full the then Past Due Balance, plus interest, owed by Agenus to Medpace. The amount of such Past Due Balance, plus interest, and the resulting number of Shares to be issued to Medpace, shall be provided to you, in writing, separately by Medpace at or about the same time you receive these joint transfer instructions and should be deemed by you to be an integral part hereof.

Very truly yours.

Agenus Inc.

By: _____
    Title:

Medpace, Inc.

By: _____
    Title:

4937-2171-9816.4